UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

STEPHANIE T.[1],                               )
                                               )
          Plaintiff,                           )
                                               )
     v.                                        )     CIVIL NO. 4:19cv101
                                               )
ANDREW M. SAUL,                                )
Commissioner of Social Security,               )
                                               )
          Defendant.                           )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social

Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the

[Commissioner] shall file a certified copy of the transcript of the record including the evidence

upon which the findings and decision complained of are based.  The court shall have the power

to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.      The claimant meets the insured status requirements of the Act through September

30, 2018.

2.    The claimant has not engaged in SGA since June 1, 2014, the alleged onset date
(20 CFR 404.1571 *et seq*., and 416.971 *et seq*.)

3.    The claimant has the following severe impairments: degenerative disc disease of
the lumbar spine, scoliosis, obesity, Sjogren's, post-traumatic stress disorder
(PTSD), obsessive compulsive disorder (OCD) and panic disorder (20 CFR
404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination that meets or medically
equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart
P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the
claimant has the RFC to perform sedentary work as defined in 20 CFR
404.1567(a) and 416.967(a) except never climb ladders, ropes or scaffolds;
occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; have
occasional exposure to unprotected heights, dangerous heavy moving machinery
and vibration; understand, remember and carry out simple routine tasks; use
judgment limited to simple work related decisions; and frequently interact with
supervisors, coworkers and the public.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and
416.965).

7.    The claimant was born on May 1, 1981 and was 33 years old, defined as a younger
individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and
416.963).

8.    The claimant has at least a high school education and is able to communicate in
English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability
because using the Medical-Vocational Rules as a framework supports a finding
that the claimant is "not disabled," whether or not she has transferable job skills
(See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and RFC (vocational
profile), there are jobs that exist in significant numbers in the national economy
that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and
416.969(a)).

> 11.    The claimant has not been under a disability, as defined in the Act, from June 1, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 26- 32 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff  filed her opening brief on March 5, 2020.  On April 16, 2020 the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff, born in 1981 (Tr. 252), was 33 years old at the onset of her disability. She has an Associate's Degree (Tr. 46) and past relevant work as an information clerk, a store manager, an assistant manager, and a mail handler (Tr. 76-77).

On July 17, 2014, Plaintiff had an MRI of the lumbar spine due to back pain (Tr. 509). The study revealed degenerative disc bulges at the L3-4 and L5-S1 levels and facet arthropathy extending from L2-3 to L5-S1 resulting in mild left-sided foraminal stenosis at L3-4 and mild bilateral foraminal stenosis at L4-5 and mild prominence of the epidural fat contributing to diffuse narrowing of the thecal sac (Tr. 509-510).

On January 20, 2015, Plaintiff was seen for follow-up of her degenerative joint disease and scoliosis of the lumbar spine (Tr. 754). She described persistent back pain. *Id.* A physical exam revealed decreased range of motion in the back (Tr. 756). Plaintiff was diagnosed with degenerative joint disease of the lumbar spine. She was prescribed Flexeril, Ibuprofen, and Tylenol. *Id*. An orthopedic evaluation was recommended (Tr. 757). As a result, Plaintiff had an orthopedic examination on February 6, 2015 (Tr. 724). Plaintiff described a long history of back pain, but that she more recently started having radicular symptoms and her course of pain has been worsening since that time. *Id*. An exam of the spine revealed tenderness of the left paraspinal region (Tr. 725). Plaintiff was advised to begin physical therapy and start treatment with pain management (Tr. 726).

On February 25, 2015, Plaintiff described ongoing lower back pain with right-sided numbness down to the knee (Tr. 678). The physical exam revealed decreased motion in the back (Tr. 679). The following month, Plaintiff had a pain management consultation (Tr. 580). She continued to have lower back pain that was radiating to the right leg. Plaintiff stated that the

pain was progressively worsening since 2013 and she had an onset of radiating leg and thigh pain in October 2014. *Id*. On exam, Plaintiff exhibited loss of the normal lumbar lordosis (curve) in a seated position, low back pain with straight leg raising test, and limited motion in the lumbar spine (Tr. 581). A course of physical therapy was prescribed (Tr. 582). Unfortunately, on March 10, 2015, Plaintiff reported doing worse despite doing therapeutic exercises at home as part of her physical therapy (Tr. 585).

On March 12, 2015, Plaintiff underwent a transforaminal epidural steroid injection at L4-5 (Tr. 646). On March 24, 2015, Plaintiff stated that she was falling more since she had the injection and her pain was only "slightly" better (Tr. 578). The next week, Plaintiff described persistent back and leg pain (Tr. 614). Physical exam revealed decreased motion of the spine due to pain (Tr. 616). Subsequent visits document regular physical therapy visits through April 27, 2015 (Tr. 599-613, 1076-1077, 1077-1079, and 1079-1080).

On April 28, 2015, Plaintiff reported ongoing symptoms of lower back pain radiating to the right leg that was worse with sitting and walking (Tr. 1039). On exam, there was decreased range of motion in the spine and positive straight leg raising on the right to 25 degrees (Tr. 1040). That same day, Plaintiff underwent a second lumbar epidural steroid injection (Tr.1049). Additional treatment records document regular physical therapy visits on April 29, 2015 and May 7, 2015 (Tr. 1080-1081 and 1029-1035). Despite this, by June 8, 2015, Plaintiff had unchanged back and leg pain (Tr. 953) and continued to exhibit decreased motion due to pain in her back (Tr. 955).

On October 28, 2015, Plaintiff reported ongoing back and leg pain despite some improvement with treatment (Tr. 1189). As at earlier visits, a physical exam revealed decreased

motion in the spine due to pain (Tr. 1194). She was prescribed Diclofenac and Flexeril (Tr. 1195).

No significant changes were documented at the next visit on December 2, 2015 (Tr. 1179-1182).

On February 9, 2016, Plaintiff stated that she was recently seen in the emergency room for chest

and back pain with a resulting diagnosis of Sjogren's syndrome (Tr. 1173). Her pain was not

relieved with Diclofenac and Flexeril. *Id*. On exam, she was found to have back pain in the

lumbar region, spasms on the right greater than left, and pain shooting down the legs to the toes

(Tr. 1174). Plaintiff was referred to a rheumatologist and for a consultation for possible spinal

surgery (Tr. 1175). It was noted that she also required an evaluation for depression. *Id*. No

changes were noted at Plaintiff's next visit, on April 13, 2016 (Tr. 1160-1163).

On August 3, 2017, Plaintiff began treatment with rheumatologist Artur Kaluta, M.D.,

after moving to Indiana from Chicago (Tr. 1254). She reported symptoms of mouth dryness with

difficulty swallowing, eye dryness, diffuse myalgias, and chronic lower back pain. *Id*. Dr. Kaluta

prescribed Plaquenil for treatment of Sjogren's syndrome (Tr. 1257). At a primary care visit on

August 28, 2017, Plaintiff reported symptoms related to anxiety and depression, back pain, and

Sjogren's syndrome (Tr. 1275). She was referred to behavioral health (Tr. 1277). On November

2, 2017, Plaintiff returned to Dr. Kaluta, reporting migratory myalgias though she had

improvement of her mouth dryness (Tr. 1252). Meloxicam was added to her other medications

(Tr. 1253).

On January 4, 2018, Plaintiff began mental health treatment with Laura Kooiman-Cox,

MA, at Wabash Valley Alliance (Tr. 1326). Plaintiff stated that she suffered physical, sexual, and

emotional abuse in multiple relationships throughout her life. As a result, she had flashbacks and

nightmares related to past trauma. She also had symptoms of anxiety, difficulty relating to others,

difficulty concentrating, hypervigilance, sleep disturbances, and a history of reckless behavior. In addition, Plaintiff suffered from obsessions and compulsions, including checking repeatedly to make sure doors are locked, resetting the chime on her door, checking that the stove was off, and worrying about bugs and "kitchen contamination." *Id*. She was diagnosed with post-traumatic stress disorder ("PTSD") with a GAF score of 40 (Tr. 1331). The report was co-signed by supervising psychologist Cathy Streifel, Ph.D. (Tr. 1332).

On January 8, 2018, Plaintiff returned to Ms. Kooiman-Cox for therapy (Tr. 1339). Plaintiff continued to have symptoms of flashbacks approximately twice a day. *Id*. On January 25, 2018, Plaintiff was seen by Dr. Streifel for her PTSD and obsessive-compulsive disorder (Tr. 1333). She had persistent flashbacks from her past trauma, problems with concentration, hypervigilance, sleep disturbances, and a history of reckless behavior. Plaintiff also continued to have obsessions and compulsions. Her GAF score remained at 40. *Id*. Subsequent notes document therapy sessions on February 6, 2018 and March 7, 2018 (Tr. 1338 and 1337).

On March 13, 2018, Plaintiff returned to her primary care provider to discuss ongoing back and knee pain (Tr. 1268). A physical exam revealed muscle tenderness in the lumbar spine, limited range of motion in the spine, and tenderness over both knees (Tr. 1269). X-rays of the knees performed in the office showed mild narrowing of the patellofemoral tibial joint in both knees and mild-to-moderate and left mild joint effusions (Tr. 1286-1287). X-rays of the lumbar spine also performed that day revealed possible partial sacralization of the left fifth lumbar vertebral body, straightening of the lumbar lordosis likely related to muscle spasms, and right-sided scoliosis (Tr. 1288-1290).

Shazla Siddiqui, M.D., began treating Plaintiff for her back and knee pain on March 19,

8

2018 (Tr. 1365). Dr. Siddiqui's exam was notable for findings of an antalgic and guarded gait, low back pain with palpation of the entire lumbar spine, pain with motion of the spine, palpable taut bands/trigger points in the muscles, and absent patellar reflexes bilaterally (Tr. 1367). Dr. Siddiqui diagnosed chronic lower back pain, bilateral knee pain, lumbosacral spondylosis, and spinal stenosis of the lumbar region with radiculopathy. *Id.*

On March 27, 2018, Plaintiff returned to Ms. Kooiman-Cox for therapy (Tr. 1336). Plaintiff reported continuing to struggle with PTSD and obsessive-compulsive symptoms. *Id*. On April 2, 2018, Plaintiff had a follow-up with Dr. Siddiqui (Tr. 1364). She stated her pain was not manageable with current treatment. *Id*. The physical exam revealed an antalgic gait and station (Tr. 1361). A trial of Tramadol was prescribed (Tr. 1362). On April 2, 2018, Plaintiff reported no changes in her PTSD and obsessive-compulsive symptoms at a therapy session (Tr. 1335).

In a Mental Impairment Questionnaire dated April 6, 2018, treating therapist Ms. Kooiman-Cox provided a summary of Plaintiff's impairments, which was co-signed by supervising psychologist Dr. Streifel (Tr. 1349-1359). Dr. Streifel confirmed her diagnoses of PTSD and obsessive compulsive disorder with a GAF score of 40 (Tr. 1349). Clinical signs and symptoms supporting the diagnoses and assessment included flashbacks, nightmares, increased fears, anxiety, difficulties with relationships, decreased concentration, hypervigilance, a history of reckless behaviors, disturbed sleep, obsessions over cleanliness and safety that occupy up to three hours of her day, appetite disturbances with weight change, decreased energy, feelings of guilt or worthlessness, impaired impulse control, emotional withdrawal or isolation, motor tension, easy distractibility, and panic attacks (Tr. 1349-1351). Dr. Streifel and Ms. Kooiman-Cox found that the symptoms and limitations detailed in the report were consistent with

9

documentation of Plaintiff's conditions (Tr. 1359).

The treating mental health sources opined that Plaintiff was "unable to meet competitive standards" (defined as an inability to satisfactorily perform the activity independently, appropriately, effectively, and on a sustained basis) in her ability to (1) maintain attention for two hour segments and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms (Tr. 1353). She was also "seriously limited but not precluded" in her ability to (1) remember work-like procedures; (2) work in coordination with or proximity to others without being unduly distracted; and, (3) deal with normal work stress. *Id*. These limitations were due to evidence of Plaintiff's forgetfulness in basic professional tasks at home and at work, difficulties with attention and following through on activities before moving on to something else, anxiety and fears in some situations, flashbacks and anxiety triggered by small spaces, and increased symptoms when under stress (Tr. 1353-1354). Dr. Streifel and Ms. Kooiman-Cox opined Plaintiff was unable to meet competitive standards in her ability to deal with the stress of skilled and semi-skilled work and that she was seriously limited in her ability to understand, remember, and carry out detailed instructions due to forgetfulness and difficulties focusing (Tr. 1355). She would miss work three times a month due to her impairments or treatment (Tr. 1359).

On May 18, 2018, Plaintiff had a new MRI of the lumbar spine that revealed degenerative changes in the lower lumbar spine with moderate central stenosis at L3-4 and moderate scoliosis (Tr. 1380-1381).

On May 23, 2018, Plaintiff had a consultation with neurosurgeon Garrett Jackson, M.D. (Tr. 1382-1383). Plaintiff described pain throughout her spine, but that it was worse in the lower

back (Tr. 1382). Dr. Jackson's exam revealed a mild scoliotic deformity of the spine.  He reviewed the recent lumbar MRI. *Id.* The neurosurgeon did not recommended surgery at that time, but discussed other treatment options with Plaintiff (Tr. 1381-1382).

Dr. Knopf evaluated Plaintiff at the behest of the Social Security Administration on January 14, 2015 (Tr. 534). She reported PTSD symptoms related to a history of multiple sexual assaults (Tr. 535). A mental status examination revealed an anxious mood, moderate depression, loss of interests, feelings of guilt, motor retardation, sleep disturbances, weight gain, fatigue, panic attacks, and compulsions (Tr. 535-537). Dr. Knopf diagnosed PTSD, panic disorder, obsessive-compulsive disorder, and adjustment disorder with depressed mood (Tr. 538-539). The consultant did not provide any opinions regarding Plaintiff's functional capacity.

At the hearing before the ALJ, Plaintiff testified that she is unable to work due to worsening symptoms from her spinal and mental impairments (Tr. 50-51). She could no longer keep up with her job duties (Tr. 51). Plaintiff described constant pain in her back that was worse with particular activities, including sitting and walking. *Id*. Plaintiff estimated she can walk half a block (Tr. 59). She can stand for 10 minutes and sit for 15 minutes. *Id.* She is most comfortable lying down (Tr. 62). She spends seven to eight hours a day lying down (Tr. 63). Plaintiff described psychiatric symptoms of anxiety, panic attacks, problems with attention, flashbacks, and obsessive compulsive symptoms (Tr. 53). She reported having seven panic attacks in the month prior to her hearing. Each one lasts for five to thirty minutes. *Id.* Her obsessive-compulsive symptoms include making sure everything is in the right place and repeatedly checking things, such as doors, locks, and her refrigerator (Tr. 54). She has difficulties focusing and staying on task (Tr. 73). She also has problems interacting with people (Tr. 74).

11

Plaintiff lives with her teenage son (Tr. 45). She does not drive and only occasionally uses public transportation because it is difficult for her to sit or stand long periods of time (Tr. 46). During the day, Plaintiff gets her son ready for school, though he "does a lot of his stuff independently" (Tr. 55). After he goes to school, she will go back to bed and rest until she needs something to eat. *Id*. She is able to do "a little bit" of chores such as dusting or making the bed, but will also usually sleep again (Tr. 55-56). Her son helps her with the house cleaning and laundry (Tr. 56). Plaintiff shops approximately once a month with help, often riding in a motorized cart to do so (Tr. 57). She rarely cooks. *Id*. She has difficulty dressing herself (Tr. 58). Plaintiff stated that physical therapy and injections helped her back pain, but only for short periods of time (Tr. 52). Her medications cause side-effects of drowsiness and upset stomach (Tr. 55). She had a gap in treatment after moving and having no insurance (Tr. 60).

Plaintiff's sister, Cheryl, completed a written report regarding Plaintiff on August 19, 2014 (Tr. 324-332). She reported seeing Plaintiff a few times a month and more frequently talking to her on the phone (Tr. 324). Cheryl observed that her sister "does what she can depending on her back." *Id*. In addition, Cheryl noted that her sister has difficulties dressing herself, bathing herself, and caring for her hair (Tr. 325). Plaintiff's sister also reported that the claimant cooks only simple meals (Tr. 326). She needed to take breaks when doing any household chores. *Id.* In addition, Cheryl reported that her sister has difficulty shopping (Tr. 327). Finally, Cheryl stated that Plaintiff has difficulties with sitting, standing, walking, lifting, navigating stairs, squatting, kneeling, bending, reaching, concentrating, and completing tasks (Tr. 329). In a report dated April 10, 2015, Cheryl Trawick reported substantially the same findings as the earlier report (Tr. 363-373).

A vocational expert ("VE") testified that an individual of Plaintiff's age, education, and work history who was limited to sedentary work except she could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and, have occasional exposure to unprotected heights, dangerous heavy moving machinery, and vibrations, could perform Plaintiff's past work as a mail handler and an information clerk (Tr. 77-78). However, if the individual was also limited to understand, remember, and carry out simple, routine tasks; use judgment limited to simple work-related decisions; and, have frequent interactions with supervisors, co-workers, and the public, she could not perform the claimant's past work (Tr. 79). Such an individual could perform other work as an inspector, an assembler, and a semiconductor bonder (Tr. 79-80). The VE stated that an individual could not work if she was off-task 10 to 12 percent of the day (Tr. 80). Finally, an individual who missed work more than once a month would be unable to work. *Id*.

In a decision dated August 15, 2018, ALJ Johnson found that despite severe impairments of PTSD, OCD, panic disorder, degenerative disc disease of the lumbar spine, scoliosis, Sjogren's syndrome, and obesity (Tr. 26), Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except she could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; have occasional exposure to unprotected heights, dangerous heavy moving machinery, and vibration; understand, remember, and carry out simple, routine tasks; use judgment limited to simple work-related decisions; and, no more than frequent interactions with supervisors, co-workers, and the public (Tr. 29). Based on this RFC, the ALJ conceded Plaintiff was unable to perform her past relevant work (Tr. 31), but found she could perform other work as an inspector, an assembler,

13

and a semi-conductor bonder (Tr. 32).

In support of remand, Plaintiff first argues that the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Plaintiff's RFC. The Seventh Circuit has repeatedly emphasized the importance of opinions from treating sources in these proceedings. *Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014). Plaintiff contends that the ALJ erred in giving "little weight" to the opinions from treating psychologist, Dr. Streifel, and treating counselor, Ms. Kooiman-Cox (Tr. 31). The ALJ concluded that their opinions are not supported by unspecified findings in "the record" and that they were based on too short period of treatment so they did not qualify as treating sources. *Id*.

Plaintiff argues that the ALJ erred by concluding that Dr. Streifel is not a treating source based on the length of Plaintiff's treatment at Wabash Valley Alliance since January 2018. A "treating source" is a claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902. A claimant has "an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that" the claimant currently sees, or previously saw, "the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.* A doctor treating or evaluating a claimant "only a few times or only after long intervals" may still be considered a "treating source if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s) ." *Id.* In contrast, a doctor is not a treating source if the claimant's relationship with the source was based solely on claimant's "need to obtain a report in support

14

of" claimant's disability claim. *Id.*

Plaintiff had received treatment at Wabash Valley Alliance 1-2 times a month (Tr. 1349) for three months when Dr. Streifel offered her opinions. The relationship was not based solely on the need for a report to obtain support for Plaintiff's disability claim, but instead shows an ongoing treatment relationship both before and after Dr. Streifel offered her opinions on Plaintiff's mental functioning. Treatment 1-2 times a month is a frequency consistent with accepted practice for treatment psychiatric impairments. As the Regulations acknowledge, a treatment relationship can be established even after a few visits, such as here, when Plaintiff had at least seven visits over the course of two months at Wabash Valley Alliance where she was seen by Dr. Streifel in coordination with counselor Ms. Kooiman-Cox. 20 C.F.R. § 404.1502 and § 416.902. Thus, Plaintiff contends that  the ALJ erred by finding there are no treating source opinions. *Elizondo v. Berryhill*, No. 5:16-CV-264, 2018 WL 1801195 *4 (S.D.Tex. March 23, 2018) (collecting cases for holding that as few as three office visits over three months establishes a treatment relationship as defined in the Commissioner's Regulations).

Plaintiff argues that the ALJ also erred by making an unexplained conclusion that the opinions from the treating behavioral health sources are not supported by unspecified findings in the record (Tr. 31). When an ALJ concludes that opinions from a treating source are inconsistent with other evidence, she must identify the inconsistent evidence and provide an appropriate explanation of the purported inconsistent findings in her decision. *Clifford v. Apfel*, 227 F.3d 863, 870-871 (7th Cir. 2000); SSR 96-2p (1996 WL 374188).

Plaintiff contends that the ALJ's failure to do so here was not harmless error since Dr. Streifel specified that her opinions were based on extensive abnormalities, including flashbacks,

nightmares, increased fears, anxiety, difficulties with relationships, decreased concentration, hypervigilance, a history of reckless behaviors, disturbed sleep, obsessions over cleanliness and safety that occupy up to three hours of her day, appetite disturbances with weight change, decreased energy, feelings of guilt or worthlessness, impaired impulse control, emotional withdrawal or isolation, motor tension, easy distractibility, and panic attacks (Tr. 1349-1351).

Plaintiff argues that these findings are consistent with evidence recorded in the treatment records (Tr. 1326,

1333, 1336, 1337, 1338, and 1339) and appropriate medical findings for assessing an individual's mental functioning. *See Ziegler v. Astrue*, 336 Fed.Appx. 563, 569 (7th Cir. 2009) ("a psychiatrist's examination will often involve little more than analyzing self-reported symptoms…"); *Wyatt v. Astrue*, No. 1:11-cv-00874-MJD-JMS, 2012 WL 2358149 *6-7 (S.D.Ind. June 20, 2012) (mental status findings and symptoms play a significant role informing the opinions from treating sources in cases involving mental impairments); *Jimenez v. Colvin*, No. 1:14-cv-00627-RLY-MJD, 2015 WL 4458959 *7 (S.D.Ind. July 21, 2015) (observable psychiatric abnormalities are appropriate clinical and objective tests for documenting the severity of a claimant's impairments) citing *Medina v. California*, 505 U.S. 437, 451 (1992) ("[o]ur cases recognize that '[t]he subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations,' because '[p]sychiatric diagnosis…is to a large extent based on medical 'impressions' drawn from subjective analysis and filtered through the experience of the diagnostician.'") quoting *Addington v. Texas*, 441 U.S. 418, 430 (1979).

Plaintiff concludes that the opinions from treating psychologist Dr. Streifel regarding Plaintiff's mental limitations are based on appropriate medical findings and are uncontradicted by

any other evidence and her opinions should have been given controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) and § 416.927(c)(2) (the Commissioner must give controlling weight to a treating physician whose opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record"). *See also* SSR 96-2p (a well-supported opinion from a treating source that is not contradicted by other substantial evidence must be adopted).

Plaintiff further argues that even if the ALJ did not err by refusing to give controlling weight to the opinions from the treating specialist, she still failed to rely on appropriate evidence to wholly reject those opinions. SSR 96-2p states that when opinions from treating doctors are not given controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight". Plaintiff reiterates that Dr. Streifel treated Plaintiff at Wabash Valley Alliance where the Plaintiff has been seen regularly since January 2018, and the nature of the treatment focused on Plaintiff's disabling mental impairments. Plaintiff notes that Dr. Streifel cited to evidence supporting her opinions (Tr. 1349-1351), and those findings are confirmed by the treatment records. It is undisputed that Dr. Streifel is a psychologist giving opinions in her area of specialty.

Plaintiff points out that the factors in 20 C.F.R. § 404.1527(c)(2)-(6) and § 416.927(c)(2)-(6) also apply to the available medical opinions to the extent they are from treating counselor Ms. Kooiman-Cox via SSR 06-03p (2006 WL 2329939), the Commissioner's definitive ruling on weighing medical opinions from other medical sources. *See Voigt v. Colvin*, 781 F.3d 871, 878

17

(7th Cir. 2015) (finding reversible error when ALJ did not give appropriate reasons for weighing opinions from nurse practitioner); *Philips v. Astrue*, 413 Fed.Appx. 878, 885-886 (7th Cir. 2010)(the ALJ must weigh sources that are not considered acceptable medical sources under SSR 06-03p and the factors specified therein).

Plaintiff alternatively submits that even if this Court were to agree with the ALJ that the opinions in the record are from examining rather than treating sources based on the length of treatment, the ALJ still failed to provide an appropriate reason for discounting those opinions. The factors in 20 C.F.R. § 404.1527(c)(2)-(6) and § 416.927(c)(2)-(6) must be considered in weighing all medical opinions, not only those from treating sources. Plaintiff claims that the ALJ did not explain how that was done here.

In response, the Commissioner argues that Ms. Kooiman-Cox and Dr. Streifel were unable to provide a detailed, longitudinal picture when completing the Mental Impairment Questionnaire due to the short length of treatment.  However, as Plaintiff has pointed out, the Regulations provide that a treatment relationship can be established even after a few visits.  20 C.F.R. §§ 404.1502; 416.902.  *Elizondo v. Berryhill*, 2018 WL 1801195 (S.D.Tex. Mar. 23, 2018)(collecting cases).

Accordingly, remand is required so that the ALJ may properly consider the medical opinions of Ms. Kooiman-Cox and Dr. Streifel.

Next, Plaintiff argues that the ALJ failed to rely on a hypothetical question to the VE that accurately described all of mental limitations recognized for Plaintiff in the ALJ's decision. In particular, the ALJ conceded that Plaintiff has "moderate" limitations (1) interacting with others and (2) concentrating, persisting, or maintaining pace (Tr. 28). However, the ALJ's  hypothetical

18

to the VE only limited Plaintiff mentally to understand, remember, and carry out simple, routine

tasks; use judgment limited to simple work-related decisions; and, have frequent interactions with

supervisors, co-workers, and the public (Tr. 79-80). Plaintiff contends that, while the restriction to

frequent interactions with others could ostensibly account for the "moderate" restriction found in

Plaintiff's ability to interact with others, the restriction to simple, routine work does not describe

any limitations in Plaintiff's ability to concentrate over a period of time, persist at tasks, or

perform tasks at a particular pace over the course of a workday or workweek despite the finding

that the claimant is moderately limited in these areas.

Plaintiff argues that the Seventh Circuit has repeatedly remanded cases where the ALJ

found moderate restrictions in concentration, persistence, or pace, but failed to include these

restrictions or similar limitations in the accepted hypothetical to the VE, and instead limited the

claimant to simple, routine, repetitive or unskilled work, as was the case here. *Varga v. Colvin*,

794 F.3d 809 (7th Cir. 2015).

However, Plaintiff acknowledges that the Seventh Circuit has recently issued several

decisions that upheld ALJ decisions against arguments that the hypothetical to the VE did not

account for findings the claimant has moderate limitations in concentration, persistence, or pace

*(see e.g. Burmester v. Berryhill*, 920 F.3d 507 (7th Cir. 2019) and *Jozefyk v. Berryhill*, 923 F.3d

492 (7th Cir. 2019).

Additionally, as the Commissioner points out in his response, Plaintiff has failed to

discuss any evidence that would support additional RFC limitations.  Plaintiff has also failed to

identify specific, additional limitations that should have been included in the RFC.  *See Dudley v.*

*Berryhill*, 773 F.App'x 838 (7th Cir. 2019).   In fact, Plaintiff failed to file a reply addressing these

concerns raised by the Commissioner. Thus, the court will not order remand on this issue.

Next, Plaintiff argues that the ALJ failed to properly evaluate plaintiff's subjective statements and failed to properly consider witness' statements.  The Commissioner's Regulations describe a two-step process when evaluating subjective testimony. First, the ALJ must determine whether the symptoms alleged are supported by objective medical evidence that could reasonably produce the symptoms alleged. Second, the ALJ must evaluate the claimant's subjective statements as to the intensity, persistence, and functionally limiting effects of those symptoms by considering the record as a whole. 20 C.F.R. § 404.1529 and § 416.929. A claimant must provide both subjective and objective evidence to qualify for disability insurance benefits for allegations of disabling pain. *Moothart v. Bowen*, 934 F.2d 114, 117 (7th Cir. 1991). However, objective evidence need not prove the severity of the claimant's testimony, only that the claimant has an impairment capable of causing the complaints. *Veal v. Bowen*, 833 F.2d 693, 698 (7th Cir. 1987). SSR 16-3p directs the ALJ to consider a number of factors before making a conclusion regarding the validity of a claimant's testimony on his or her symptoms and resulting limitations, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other relevant factors concerning the individual's functional limitations and restrictions.

The ALJ in the present case conceded that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms" but found her statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the medical and other evidence in the record" (Tr. 30). She concluded that objective imaging results do not support the degree of pain and physical limitation alleged by Plaintiff. The ALJ found no evidence that Plaintiff's physical impairments worsened around the time of her onset date as compared to prior to this time. The ALJ concluded that Plaintiff's activities of daily living fail to support her allegations regarding her physical and mental impairments. *Id*.

Plaintiff argues that the ALJ's evaluation of her subjective statements is patently wrong. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). Plaintiff concludes that the ALJ fails to explain why the objective imaging studies cannot support Plaintiff's allegations regarding her pain and resulting limitations. No physicians who reviewed all the imaging studies made such a conclusion and the ALJ is not permitted to rely on her lay interpretation of the objective testing. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (warning that judges must be careful not to succumb to the temptation to "play doctor"). Furthermore, 20 C.F.R. § 404.1529(c)(2) and § 416.929(c)(2) state that a claimant's allegations cannot be rejected "because the available objective medical evidence does not substantiate your statements." *See also* SSR 16-3p ("[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques"). The Seventh Circuit has also made clear that subjective "complaints…need not be confirmed by diagnostic tests." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015)(collecting cases). *See also Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (finding that a "recurrent error made by the Social Security Administration's administrative law judges" is the conclusion

21

that disabling symptoms must be substantiated by particular "objective" testing).

Plaintiff further claims that the ALJ mischaracterized the record by concluding that it did not show worsening of Plaintiff's physical symptoms around the time of her alleged onset date. At an orthopedic evaluation in February 2015, Plaintiff reported that had recent symptoms of radiculopathy and worsening pain despite a long history of back problems (Tr. 724). During a pain management consultation in March 2015, Plaintiff described her pain as progressively worsening since 2013 and an onset of radiating leg and thigh pain since October 2014 (Tr. 580). No evidence contradicts these statements. Therefore, the evidence supports Plaintiff's allegations of worsening pain since 2014.

Additionally, Plaintiff argues that the ALJ failed to explain how Plaintiff's activities of daily living contradict her statements regarding her physical and/or mental impairments. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (collecting cases for holding that the failure of ALJs to recognize the difference in performing activities of daily living with flexibility and performing to the standards required by an employer "is a recurrent, and deplorable feature of opinions by administrative law judges in social security disability cases"); *Bauer v. Astrue*, 532 F.3d 606, 608-609 (7th Cir. 2008) (holding that the fact the claimant could dress appropriately, shop for food, prepare meals, perform chores, take care of hygiene, and care for a son only meant that Plaintiff was "not a raving maniac who needs to be locked up" but did not contradict finding of mental disability). Plaintiff argues that there is no evidence she engages in activities that are contrary to specific limitations described by the treating psychiatrists nor that he can perform full-time work 8 hours a day, 40 hours a week. In fact, she described significantly limited activities, including no driving and only occasionally using public transportation (Tr. 46). During

22

the day, she spends a lot of time in bed and only sporadically doing chores (Tr. 55-56). Her son

helps her with cleaning and laundry (Tr. 56). Plaintiff shops approximately once a month with

help, often riding in a motorized cart to do so and rarely cooks (Tr. 57).

Further, Plaintiff contends that the ALJ failed to adequately consider consistent statements

from Plaintiff's sister, Cheryl, who provided several witness statements confirming the claimant's

allegations (Tr. 324-332 and 363-373). The ALJ wrote that she gave "partial weight" to the

written statements, but she failed to explain what findings in the statement were accepted or

rejected nor why (Tr. 31). Although an ALJ's determination of the credibility of a lay witness is

entitled to considerable weight. *Cheshier v. Bowen*, 831 F.2d 687, 690 (7th Cir. 1987). Such a

determination must still be based upon substantial evidence and cannot be premised on errors of

law or fact. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). Cheryl confirmed Plaintiff's

allegations that she has limitations in physical activities such as sitting, standing, walking, and

lifting/carrying, as well as difficulties concentrating (Tr. 329). She also described Plaintiff's

significant limitations performing daily activities. Plaintiff claims that the ALJ provided no

explanation whatsoever in her written decision why those uncontradicted statements from the

witness were apparently rejected.

An individual's subjective statements are insufficient to establish disability. 20 C.F.R. §

404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you

are disabled."). "An ALJ is in the best position to determine a witness's truthfulness and

forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is

'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). Plaintiff bears the

burden of demonstrating that the ALJ's evaluation of her symptoms was patently wrong. *See Horr*

23

*v. Berryhill*, 743 F.App'x 16, 19-20 (7th Cir. 2018). Here, the ALJ found that Plaintiff's

medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting

effects of these symptoms were not entirely consistent with the medical evidence and other

evidence in the record (Tr. 30).

Moreover, "an ALJ's credibility findings need not specify which statements were not

credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). In other words, "[a]n ALJ need

not discredit a [claimant's] individual statements. Rather, the ALJ need only minimally articulate

the evidence that prompted [her] to generally distrust the [claimant's] account of her limitations."

*Bogner v. Berryhill*, No. 1:16-CV-336, 2017 WL 2928200, at *8 (N.D. Ind. July 10, 2017); *see

also Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992) (The ALJ must only "minimally

articulate [her] reasons for crediting or rejecting evidence of disability."). The Commissioner

maintains that the ALJ met the minimal articulation standard here.

Plaintiff asserts that the ALJ failed "to explain why the objective imaging studies cannot

support [her] allegations regarding her pain and resulting limitations". However, the ALJ stated

that "neither the medical record – particularly the objective evidence (MRIs, x-rays) – nor the

mental health record correlate with her alleged symptoms" (Tr. 30). Although "we will not reject

your statements about the intensity and persistence of your pain or other symptoms . . . solely

because the available objective medical evidence does not substantiate your statements," there

still must be objective medical evidence that, "when considered with all of the other evidence . . .

would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a), (c)(2). Earlier in the

decision, the ALJ had already discussed the May 2018 MRI imaging of the lumbar spine showing

"a very mild thoracolumbar scoliosis with fairly normal appearing lumbar lordosis and only very mild to minimal degenerative changes of the lower thoracic and lumbar spine with no evidence of any nerve compression at any level and no evidence of listhesis" (Tr. 27, 1382). Plaintiff demonstrated normal gait and station (Tr. 27, 1382). "Inspection of the back shows no lesion. She does have a very mild scoliotic deformity in the coronal plane. She has no significant kyphosis. She has intact motor and sensory function grossly in the lower extremities. She has normal muscle bulk and tone with no upper motor neuron signs" (Tr. 27, 1382). This recent imaging showing "very mild" and "fairly normal" findings was also relevant to the ALJ's observation that "the record does not support an increase in severity consistent with [Plaintiff's] allegations" (Tr. 30, 1382).

As noted above, Plaintiff also contests the ALJ's conclusions regarding her daily activities. *See* 20 C.F.R. § 404.1529(c)(3)(i). "But an ALJ is not forbidden from considering statements about a claimant's daily life. In fact, [A]gency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities." *Jeske v. Saul*, No. 19-1870, 2020 WL 1608847, at *8 (7th Cir. April 2, 2020) (citing 20 C.F.R. § 404.1529(c)(3)(i)). Therefore, the ALJ properly cited evidence of Plaintiff's daily activities that did not support Plaintiff's allegations of disabling limitations. The ALJ noted that Plaintiff's "own admissions of activity in her function reports" did not support the severity of alleged limitations from OCD or PTSD (Tr. 30, 315-322, 351-358). Like in *Jeske*, the ALJ here "did not reason that [Plaintiff's] activities of daily living are as demanding as those of full-time work. Rather, the ALJ considered [Plaintiff's] activities to determine whether her symptoms were as severe and limiting as she alleged." *Id*.

Also as noted above, Plaintiff alleges that the ALJ "failed to adequately consider consistent statements" from her sister. However, the ALJ did not ignore the Third Party Function Reports completed by Plaintiff's sister, assigning them partial weight (Tr. 31, 324-331 363-370). Further, it is "permissible for [an] ALJ to discredit the testimony of those interested witnesses that favor[] [Plaintiff]." *Limberopoulos v. Shalala*, 17 F.3d 975, 979 (7th Cir. 1994). "An ALJ's findings need not be perfect, they just must not be patently wrong." *Brumbaugh v. Saul*, No. 1:19-CV-00082, 2020 WL 549579, at *6 (N.D. Ind. February 4, 2020) (citing *Shideler*, 688 F.3d at 312; *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011); *Kittelson v. Astrue*, 362 F.App'x 553, 557 (7th Cir. 2010)). In the present case,  the ALJ's evaluation of Plaintiff's symptoms was not patently wrong.  Accordingly, remand is not required on this issue.  This case is remanded solely on the treating physician issue discussed above.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

 Entered: May 11 , 2020.

s/ William C.  Lee
William C. Lee, Judge
United States District Court